**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: scott@bursor.com
        ltfisher@bursor.com
        ykrivoshey@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIK BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, LLC,<br><br>Defendant. | Case No. 5:16-cv-00263-DMG-(Ex)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: October 26, 2018<br>Time: 3:00 p.m.<br>Courtroom:  8C<br><br>The Honorable Dolly M. Gee |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 1

    A. DIRECTV Does Not Obtain Consent From Authorized Users Or Third Parties Whose Numbers May Be Provided For Service Calls ................................................................................ 1

    B. The ▮▮▮▮▮ Account ................................................................... 2

    C. The ▮▮▮▮▮ Account .................................................................... 6

III. LEGAL STANDARD ........................................................................................ 7

IV. ARGUMENT ..................................................................................................... 8

    A. Defendant Has Failed To Meet Burden To Prove Consent To Receive Calls On ▮▮▮▮▮ Account ................................................. 8

    B. Defendant Has Failed To Meet Burden To Prove Consent To Receive Calls On ▮▮▮▮▮ Account ............................................... 11

    C. Calls Predating December 2015 ............................................... 12

V. CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abrantes v. Northland Grp., Inc.*,
   2015 WL 1738255 (N.D. Cal. Apr. 13, 2015) ...................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................................. 8

*Baird v. Sabre, Inc.*,
   995 F. Supp. 2d 1100 (C.D. Cal. 2014) ............................................................ 9, 10

*Cartrette v. Time Warner Cable, Inc.*,
   157 F. Supp. 3d 448 (E.D.N.C. 2016) .................................................................. 9

*Castro v. Green Tree Servicing LLC*,
   959 F. Supp. 2d 698 (S.D.N.Y. 2013) .................................................................. 9

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*,
   931 F.2d 1472 (11th Cir.1991) .............................................................................. 7

*Emanuel v. Los Angeles Lakers, Inc.*,
   2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) ..................................................... 10

*Fober v. Mgmt. & Tech. Consultants, LLC*,
   2016 WL 7626431 (C.D. Cal. July 29, 2016) ..................................................... 10

*Houghton v. South*,
   965 F.2d 1532 (9th Cir. 1992) .............................................................................. 7

*In the Matter of Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*,
   7 F.C.C.R. 8752 (1992) ................................................................................. passim

*Levy v. Receivables Performance Mgmt., LLC*,
   972 F. Supp. 2d 409 (E.D.N.Y. 2013) .................................................................. 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .............................................................................................. 8

*Matter of Rules & Regulations Implementing the TCPA*,
   30 F.C.C. Rcd. 7961 ............................................................................................ 11

*Modica v. Green Tree Servicing, LLC*,
   2015 WL 1943222 (N.D. Ill. Apr. 29, 2015) ...................................................... 10

*Reardon v. Uber Techs., Inc.*,
   115 F. Supp. 3d 1090 (N.D. Cal. 2015) .............................................................. 10

*Sherman v. Yahoo! Inc.*,
   150 F. Supp. 3d 1213 (S.D. Cal. 2015) ................................................................. 9

*Soppet v. Enhanced Recovery Co., LLC*,
   679 F.3d 637 (7th Cir. 2012) .............................................................................. 11

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) .......................................................................... 7, 10

**STATUTES**

28 U.S.C.A. § 2342(1) ................................................................................................ 9

**RULES**

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 4

## I.  INTRODUCTION

Defendant's motion seeks to greatly limit the scope of prior express consent needed to call third parties using an autodialer and prerecorded messages.  Under Defendant's argument, simply calling a third party gives such third party consent to call using an autodialer, as the act of calling purportedly "releases" a number out into the world.  This is not a close issue.  The FCC has issued rulemaking stating that "if a caller's number is 'captured' by a Caller ID or an ANI device without notice to the residential telephone subscriber, the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls." *In the Matter of Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 ¶ 31 (1992) (the "1992 FCC Order").  Otherwise, any person who has ever dialed anyone else will have deemed to have consented to receive autodialed and prerecorded message calls on their cellphones, precisely the problem the Congress sought to curtail in enacting the TCPA.  It is undisputed that Plaintiff never received notice on any purported calls with DIRECTV that his number would be stored in any way, or used for automated service calls.  Thus, whether or not Plaintiff may or may not have called DIRECTV to complain about a "snowy" screen or complain about service is wholly irrelevant.  Accordingly, Defendant's motion should be denied, and the Court should find as a matter of law that Defendant lacked prior express consent to call Plaintiff.

## II.  FACTUAL BACKGROUND

### A.    DIRECTV Does Not Obtain Consent From Authorized Users Or Third Parties Whose Numbers May Be Provided For Service Calls

A DIRECTV account holder has the responsibility for creating a DIRECTV account, adding any "authorized users" on an account, and providing all of the relevant information regarding the account.  Krivoshey Decl., Ex. [ ] ("Dunleavy Dep."), at 28:7-29:8, 36:13-15 ("Q. Can someone that's not the account holder add

themselves as an authorized user" A. No."). DIRECTV has no process of verifying the correctness or ownership of the phone numbers provided to it by account holders with respect to the account holders' telephone numbers or the telephone numbers of any added authorized users. *Id*. Thus, an account holder can add another as an "authorized user" and give their number to DIRECTV without the "authorized user" having any knowledge of the event.

When there is a maintenance, installation, or other service visit, DIRECTV does not obtain consent to call a third party's number that may have been provided prior to making automated and prerecorded calls to such numbers. *See id*., at 30:6-35:20. Instead, account holders can provide contact numbers of third parties regarding a specific service visit, such as, for example, the number of a tenant who can let DIRECTV's employees inside to make a necessary installation or upgrade. *Id*., at 30:4-33:14. In that situation, DIRECTV's first contact with the tenant or other third party is an automated, prerecorded call sent shortly before the service visit. *Id*. Only after such automated calls are made, DIRECTV may also contact the third party via a live call from a DIRECTV employee to confirm the reservation. *See id*. Neither the account holder, the authorized user, or any other third party whose numbers may have been provided to DIRECTV are given an opportunity to "opt-in" to receive these prerecorded calls regarding an installation or service event. *See id*., at 33:15-35:11.

      **B.**    **The ▮▮▮▮▮▮ Account**

Mr. ▮▮▮▮▮▮ was Plaintiff's landlord for a period of time in 2015. Plaintiff's Statement of Genuine Disputes of Material Fact ("SGD"), ¶ 27. Mr. ▮▮▮▮▮▮ already had DIRECTV by the time Plaintiff moved into the ▮▮▮▮▮▮ residence. *Id*., ¶ 37. Plaintiff is not an authorized user on the ▮▮▮▮▮▮ account. *Id*. ¶ 38. Plaintiff's name has never been listed anywhere on the ▮▮▮▮▮▮ account, Plaintiff never received bills regarding the ▮▮▮▮▮▮ account, and Plaintiff did not make any

payments with respect to the ▮▮▮▮ account. *Id.* Plaintiff is not aware of Mr. ▮▮▮▮ ever listed him or his 6166 number as a contact or reference for any service appointment, deliveries, or installations. *Id.* ¶ 36. Plaintiff has not told anyone or authorized anyone to list his cellular telephone number as an emergency contact or a contact for deliveries, services, or installation on the ▮▮▮▮ (or any other) account:

> Q. Have you told any friends or neighbors that they can list your telephone number as, like, an emergency contact or a contact for deliveries or a contact for anything like that?
>
> A. No.

Krivoshey Decl., Ex. 2 ("Brown Dep."), at 48:11-15; SGD ¶ 36.

> Q. When you lived with Mr. ▮▮▮▮, if he had deliveries or if he had a satellite installation or if he had other people that were at the house coming to the house, would he have them contact you sometimes?
>
> A. Oh, no.
>
> Q. You wouldn't ever have him call you to get in the door or anything like that"
>
> A. No, not that I recall.
>
> Q. You don't recall or he wouldn't do it?
>
> A. Let me hear the question again, please.
>
> Q. When you lived with Mr. ▮▮▮▮, would he ever have you handle deliveries or installation or people that would come by the house and have them contact you to get in the house?
>
> A. No. It's not like that, no.

*Id.*, at 54:1-16; SGD ¶ 35.

Neither Plaintiff's name nor his 6166 number are listed as a contact number anywhere on the ▮▮▮▮ account. *See id.* ¶ 39. DIRECTV is not in possession of a single document linking the 6166 number to Malik Brown's name in its records. SGD ¶ 54. DIRECTV has no documentation of the 6166 number ever being

provided as a contact point for any equipment upgrade or service transaction, including a December 30, 2015 service upgrade on the ▮▮▮▮ account. SGD ¶ 42. DIRECTV's Fed. R. Civ. P. 30(b)(6) witness and DIRECTV's counsel admitted as such when asked about outbound automated call logs made to Plaintiff's 6166 number:

> Q. Do you have the document?
>
> A. I have the document.
>
> Q. Have you seen it before?
>
> A. I have seen it before.
>
> Q. What is it?
>
> A. This is a very simple summary of automated outbound communications from AT&T to a customer or designated contact point, in this case, related to a maintenance or service event. And from recollection, these outbound calls relate to two accounts: the first line being the ▮▮▮▮ account, and the next four being the ▮▮▮▮ account.
>
> Q. How do you know that – so, the first line – by "the first line," you're referring to an entry of December 29, 2015; is that correct?
>
> A. Correct.
>
> Q. And how do you know that, that refers to the ▮▮▮▮ account?
>
> A. There were maintenance and upgrade transactions ordered by ▮▮▮▮ around this time, and the 6166 number was provided as a contact point for the tech during the equipment upgrade.
>
> **Q. Have we seen in a document where the 6166 number was provided to the tech?**
>
> **A. We have not reviewed that today.**
>
> **Q. Does that document exist?**
>
> **A. I cannot recall – yeah, I can't recall exactly.**
>
> Q. So, how do you know about it?

1
2      A.    I believe in the fairly extensive set of documents that I've reviewed, that I have seen it; but I don't have it to hand.

3      MR. KRIVOSHEY:    Counsel, do you know if it was produced?

4      MR. STEINMETZ:    Are you talking about –

5
6      MR. KRIVOSHEY:    Or what he's talking about?

7      MR. STEINMETZ:    Are you talking about the policy documents?

8      THE WITNESS:   Well, it will be in the policy documents; **but, no, I'm talking about the specific capture of the 6166 number related to the maintenance action on the ▮▮▮▮▮ account.**

9
10     **MR. STEINMETZ:    I don't believe that there's a document for that.**

11     **THE WITNESS:  Right.**

12
13     Q.    Okay. So, if there is – I'm going to take counsel's word that there is no document. Your only basis for thinking that this is the ▮▮▮▮▮ account is the timing of the call?

14
15     A.    Correct.

16   Dunleavy Dep., at 115:15-117:23 (emphasis added); SGD ¶ 42.

17        All services, installation, and upgrades regarding the Koromah account were

18   approved by Mr. ▮▮▮▮▮, not Plaintiff, including a December 30, 2015 installation.

19   *See* SGD ¶ 40. Neither Plaintiff's name nor his 6166 number are listed anywhere on

20   the December 30, 2015 work order on the ▮▮▮▮▮ account. *Id*. ¶ 41.

21        DIRECTV's only evidence of any contact between Plaintiff and DIRECTV

22   regarding the ▮▮▮▮▮ account are call logs showing 10 calls coming from

23   Plaintiff's 6166 number. *See* SGD ¶ 29. DIRECTV employees are trained to always

24   ask callers to identify themselves, and are trained to record the identity of the person

25   they are speaking with in contemporaneous notes. *Id*. ¶ 43. DIRECTV's

26   contemporaneous account notes do not show a single instance of a person calling in

27   regarding the ▮▮▮▮▮ account and identifying themselves as Malik Brown. *Id*. ¶

28   44. On all calls regarding Mr. ▮▮▮▮▮ account, the caller identified themselves

as ▇▇▇▇ (the account holder) or his spouse ▇▇▇▇ with the exception of one call on September 2, 2015, where the caller identified themselves as Mr. ▇▇▇▇ son. *Id.* ¶ 45. Mr. Brown's only recollection of potential calls he may have made to DIRECTV was to call regarding a complaint. *See* Brown Dep., at 51:4-25.

At no time during any of the calls from the 6166 number to DIRECTV on either the ▇▇▇▇ or ▇▇▇▇ account did DIRECTV, or any of its employees, notify the person calling that the number from which they were dialing would be used for contact purposes or stored by DIRECTV for any purpose. *Id.* ¶ 47.

  **C. The ▇▇▇▇ Account**

For a time, Plaintiff lived in Temple City, the same city where Ms. ▇▇▇▇ apparently resides and had a DIRECTV subscription. Brown Dep., at 55:14-25. At his deposition, however, Plaintiff could not recall the name ▇▇▇▇. *Id.*, at 55:5-10. Plaintiff does not recall using DIRECTV services while living in Temple City. *Id.*, at 56:8-12.

Unbeknownst to Plaintiff, he apparently was listed as an authorized user on the ▇▇▇▇ account. *See* SGD ¶ 17. His number was also listed as a contact number. *Id.* ¶ 18. DIRECTV cannot say when Malik Brown was added as an authorized user on ▇▇▇▇ account. SGD ¶ 51. Plaintiff is not the primary contact listed on the ▇▇▇▇ account. SGD ¶ 52. Plaintiff never listed himself as an authorized user on any DIRECTV account, including the ▇▇▇▇ account. SGD ¶ 55, Brown Dep., at 57:17-58:13. DIRECTV does not know who added the 6166 number to ▇▇▇▇ account, and admits it could have been ▇▇▇▇ not Plaintiff, that added the number. SGD ¶ 50. In fact, as a non-account holder, it must have been ▇▇▇▇, and not Plaintiff, that added Plaintiff as an authorized user. *See* Dunleavy Dep., at 36:13-15 ("Q. Can someone that's not the account holder add themselves as an authorized user" A. No.").

Plaintiff has not told anyone or authorized anyone to list his cellular telephone number as an emergency contact or a contact for deliveries, services, or installation on the ▮▮▮ (or any other) account.  SGD ¶ 36.

There is only one inbound call made from the 6166 number on the ▮▮▮ account, dated May 31, 2014, but that call resulted in an entry of "WRONG ACCOUNT" by DIRECTV's employee that answered the call.  SGD ¶ 53.  No other inbound calls from the 6166 number were ever made regarding the ▮▮▮ account. *Id*.

DIRECTV's call logs shows that on June 26, 2015, Plaintiff may have called DIRECTV regarding the ▮▮▮ account to complain about a snowy screen.  SGD ¶ 24.  However, this call was not made from Plaintiff's 6166 number.  *Id*.  Rather, the call was made from a number ending in 6550, the primary number associated with the ▮▮▮ account.  *Id*.

## III.  LEGAL STANDARD

Under the TCPA, "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof."  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).  Here, the only element at issue is whether or not Plaintiff provided DIRECTV with consent to make autodialed and prerecorded calls to his 6166 number – an element that Defendant will have to prove at trial.  "Where, as here, the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original).  Defendant thus bears the initial burden of establishing the absence of a genuine issue of fact on the issue of consent.  *See id*.  Only if Defendant meets this initial burden, the burden shifts to Plaintiff to designate specific facts showing that there is a genuine issue.  *See id*.  See also *Chanel, Inc. v. Italian Activewear of*

*Florida, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991) ("But—particularly where, as here, the moving party is also the party with the burden of proof on the issue—it is important to remember the non-moving party must produce its significant, probative evidence only after the movant has satisfied its burden of demonstrating there is no genuine issue of material fact."). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quotations omitted).

## IV. ARGUMENT

### A. Defendant Has Failed To Meet ▮▮▮▮ To Prove Consent To Receive Calls On ▮▮▮▮ Account

Defendant's only "evidence" of Plaintiff's purported consent to receive calls on the ▮▮▮▮ account is the fact that DIRECTV's call logs show 10 incoming calls from Plaintiff's 6166 number regarding the ▮▮▮▮ account. *See* Def's Br. at 12. Notably, Defendant does not argue that Plaintiff actually provided his telephone number to DIRECTV on those calls – such as, by verbally stating his telephone number or telling DIRECTV that they can call him at that number. Rather, DIRECTV argues that the fact that Plaintiff allegedly made these calls at all, and that DIRECTV's Caller-ID system recorded the phone number from which the calls originated, is sufficient evidence of consent. *See id.*

Although it is disputed whether or not Plaintiff actually made these calls, the issue is irrelevant. As a matter of law, a person does not provide consent to be called for purposes of the TCPA, or "releas[e] his number to be called," simply by calling a company and having his number recorded by the company's Caller-ID.

In a 1992 rulemaking action implementing the TCPA, the FCC ruled that "persons who knowingly release their phone numbers have in effect given their

invitation or permission to be called at the number which they have given, absent instructions to the contrary." 1992 FCC Order. However, the 1992 FCC Order clarified:

> [I]f a caller's number is "captured" by a Caller ID or an ANI device without notice to the residential telephone subscriber, the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls. There, calls may be placed to "captured" numbers only if such calls fall under the existing exemptions to the restrictions on autodialer and prerecorded message calls.

*Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100, 1105-06 (C.D. Cal. 2014) (quoting 1992 FCC Order). The Court is bound the FCC's interpretation by the Hobbs Administrative Orders Review Act, 28 U.S.C.A. § 2342(1) and does not have jurisdiction to set it aside. *See Sherman v. Yahoo! Inc.*, 150 F. Supp. 3d 1213, 1216 (S.D. Cal. 2015); *Cartrette v. Time Warner Cable, Inc.*, 157 F. Supp. 3d 448, 453 (E.D.N.C. 2016) ("Therefore, regardless of whether this FCC interpretation of the TCPA is entitled to Chevron deference, this Court lacks jurisdiction to review its validity."). Accordingly, as other courts have held when faced with similar facts, Defendant's argument that Plaintiff consented or "released his number" by virtue of calling DIRECTV must fail. *See Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 721 (S.D.N.Y. 2013) ("The FCC has noted, however, that if a caller's number is 'captured' by a Caller ID without notice to the caller, the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls. Accordingly, Defendants' argument that Plaintiffs 'consented' to the calls at issue by initiating calls to Defendants using their cell phones must fail.") (quotations and citations omitted); *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 422–23 (E.D.N.Y. 2013) (denying motion for summary judgment on issue of consent where defendant argued "that plaintiff provided prior express consent by initiating calls to RPM and/or discussing his financial information and a potential settlement of the debt dispute with

representative of RPM"); *Modica v. Green Tree Servicing, LLC*, 2015 WL 1943222, at *4 (N.D. Ill. Apr. 29, 2015) (granting summary judgment in favor of plaintiff where "Defendant obtained her number when she made an inbound call to complain about Defendant calling her neighbors regarding the subject debt.").

      None of the cases Defendant cites suggest a different result, as the provision of a number by the plaintiffs in those cases was typically in a credit or membership application where the plaintiffs *had to actually write their number down or enter it online*. *See, e.g., Van Patten*, 847 F. 3d at 1040 (plaintiff wrote down his contact information on a "desk courtesy card to the gym"); *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) ("Plaintiffs do not dispute that they provide their phone numbers to Uber"); *Fober v. Mgmt. & Tech. Consultants, LLC*, 2016 WL 7626431, at *1 (C.D. Cal. July 29, 2016) ("At the time of her enrollment, she submitted an Enrollment Form, which included – among other things – her telephone number."); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1101 (C.D. Cal. 2014) (plaintiff entered her cellphone number in the "Contact Information" section of defendant's website).

      Defendant's only cited case that is remotely close to the facts here is *Emanuel v. Los Angeles Lakers, Inc.*, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013), where the plaintiff sent a text message to the Lakers to have a message displayed on the scoreboard during a game. The plaintiff then received a confirmatory text back. Judge Wu held that the plaintiff consented to the confirmatory text message as any reasonable person would expect a text message response, and, accordingly, consented to the confirmatory response. *Emanuel*, 2013 WL 1719035, at *3. That is not the case here. Here, even assuming that Plaintiff made calls to DIRECTV to complain about his service, a reasonable person would not expect to receive automated and prerecorded messages just by virtue of calling. In any case, to the

extent that *Emanuel* is inconsistent with the 1992 FCC Order, the FCC Order controls.

### B. Defendant Has Failed To Mee██████en To Prove Consent To Receive Calls On ██████ Account

Defendant's only evidence of Plaintiff's consent to receive automated calls on his cellphone regarding the ██████ account is the fact that his number was listed as a contact number on the account and he was listed as an authorized user. *See* Def's Br. at 8-9. However, Defendant admits that ██████, and not Plaintiff added his number and his name as an authorized user on the account. SGD ¶ 49. Plaintiff never listed himself as an authorized user on this, or any other, DIRECTV account. *Id*. ¶ 55. Plaintiff made only one phone call regarding the ██████ account, but that call was not made from his 6166 number, and, accordingly, that call cannot be evidence of consent to receive calls on his 6166 number. *Id*. ¶ 24, 53.

"The TCPA states that it shall be unlawful to make any call using an autodialer or an artificial or prerecorded voice, absent certain exceptions, without the prior express consent of the called party." *In the Matter of Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961, 2015 FCC Order, 2015 WL 4387780, at *26 (2015) ("2015 FCC Order"). "[T]he 'called party' is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business plan." *Id*. Thus, under the TCPA, a person cannot provide express consent on behalf of a third party. *See, e.g., Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012) (noting that a creditor would not have consent to call a number given by a customer where the number was not the customer's own number, such as via typo, or where the number was later reassigned). *See also Abrantes v. Northland Grp., Inc.*, 2015 WL 1738255, at *3 (N.D. Cal. Apr. 13, 2015) (the definition of "called party," for purposes of consent, means the current subscriber, and not the intended recipient). Accordingly, because the evidence is undisputed that ██████

and not Plaintiff, created the account, added him as an authorized user, and added his telephone number, Defendant's motion should be denied. Plaintiff never listed himself as an authorized user on any account, and did not authorize anyone else to do so. SGD ¶¶ 35-36, 55.

### C. Calls Predating December 2015

Defendant argues that Plaintiff waived his claims as to any calls predating December 2015 because the deadline to amend pleadings has passed, limiting the calls at issue to one call on December 29, 2015. As an initial matter, Plaintiff alleges that he received calls from DIRECTV from more than one number, putting Defendant on notice that more than one call was at issue. Compl. ¶ 13. Further, at the parties' April 27, 2018 scheduling conference, the Court explicitly stated that it was setting only deadlines relating to the present motion for summary judgment, and put off setting any other deadlines. Krivoshey Decl., Ex. 10, at 21:5-8 ("Well, I want to have the issue of prior consent decided upfront. And so I'm going to tee that up so that we do that before we set up any other further deadlines."). Should the Court believe that calls predating December 2015 fall outside the pleadings, Plaintiff asks that the Court grant leave to file an amended complaint to include allegations regarding the calls predating December of 2015.

### V. CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. Further, should the Court find that these facts do not constitute consent as a matter of law, Plaintiff requests that the Court find that he did not provide consent as a matter of law with respect to any DIRECTV account.

Dated:                               **BURSOR & FISHER, P.A.**

                                        By:      */s/ Yeremey Krivoshey*
                                                     Yeremey Krivoshey

1
2
3
4
5
6

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: scott@bursor.com
          ltfisher@bursor.com
          ykrivoshey@bursor.com

7   *Attorneys for Plaintiff*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28